FILED

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS** 2006 NOV 13  PM 1:04
**SAN ANTONIO DIVISION**

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

**MICHAEL MCCRACKEN**

**PLAINTIFF,**

# SA06CA0988 XR

**v.**

CIVIL NO._____
**US CONSTITUTION, IV,V, VI,**
**VIII, XIV, XV AMENDMENTS**
**42 USC 1981**

**PHIL HARDBERGER, MAYOR, CITY OF SAN** **42 USC 1983**
**ANTONIO, AND SHERYL SKULLY, CITY** **42 USC 1985 (3)**
**MANAGER, WILLIAM MCMANUS, CHIEF OF** **42 USC 1988**
**POLICE, IN THEIR OFFICIAL AND** **Pendant Texas State Actions**
**INDIVIDUAL CAPACITIES, CITY OF SAN** **Official Oppression, Civil Assault**
**ANTONIO, AND MICHAEL GARZA AND JOHN** **With Deadly Weapon, Attempted**
**E. SCHILLER, IN THIER OFFICIAL AND** **Murder, False Arrest, False**
**INDIVIDUAL CAPACITIES** **Imprisonment, Filing False Reports,**
**Failure to Intervene, Failure to**
**DEFENDANTS.** **Discipline, Texas Tort Claim, et. al.**

## ORIGINAL COMPLAINT

**A.    INTRODUCTION**

1.    Michael McCracken ("Plaintiff McCracken") brings this action for compensatory

and punitive damages and injunctive relief against Phil Hardberger, Mayor, City of San Antonio,

("Defendant Hardberger"), in his official capacity only, Sheryl Skully, City Manager,

("Defendant Skully") and William McManus, Chief of Police, ("Defendant McManus") in their

official and individual capacities, City of San Antonio, ("Defendant City") and Michael Garza,

Badge # 0092, ("Defendant Garza") and John E. Schiller, Badge # 0629, ("Defendant Schiller"),

individually and in their official capacities because Defendants, jointly and severally, denied,

under the color of authority, Plaintiff McCracken his civil rights and civil liberties as guaranteed

him by the Constitutions and the Statutes and Laws of the United States and the State of Texas

when Defendant Garza shot Plaintiff McCracken in the back on March 9, 2006, wrongfully arrested and charged him with crimes he did not commit and left him permanently injured with the steel bullet left visibly lodged in his left arm.

2.      Plaintiff McCracken was subjected to intentional, grotesque and humiliating excessive and even deadly force by the Defendants, individually and collectively. While fleeing, Plaintiff McCracken, (now, detainee) posed no threat to the individual police officer Defendants and other officers on the scene or any other citizen. The Defendants' actions, if known, would shock and continue to shock the consciences of the citizens of the State of Texas and beyond.

3.      The below delineated, factual description of the excessive and deadly force used against Plaintiff McCracken together with the medical records confirming that he was shot in the back and the extensive media accounts of Defendant City's excessive and deadly use of force in this year, 2006, alone provide a graphic eyeshot view of the custom, pattern and practice of Defendants' propensity to employ excessive and deadly force against San Antonians and American citizens for illegal and unjustified reasons. But for such depictions and lawsuits of this nature, American citizens would never see how Defendant City officers, **"the law, become the lawless."** Law abiding citizens and the community, except the victims, rarely ever see the criminal, cruel and unusual conduct of Defendant City's police officers, who are entrusted with the authority and responsibility **"to serve and protect,"** as they punish, brutalize and kill citizens for their own personal satisfaction and for the display and use (misuse) of authority, all under the color of law. On the evening of March 9, 2006, all Defendants, specifically, Defendant City of San Antonio, violated its San Antonio Police Department's own published and stated policy as follows:

– **SAPD DEPARTMENT MISSION** – **"The mission of the San Antonio Police Department is to provide quality community-oriented services . . . reduce fear . . . always treating people with dignity, fairness and respect."**

4.      Even more disturbing, this matter, as evidenced by identifiable and quantifiable, insidious customs, patterns and policies of administrative corruption by Defendant City of San Antonio through its Police Department Administrative Staff and City Management, specifically, Defendants Skully and McManus, indicates the municipal government's calculated and callous disregard for the rights and privileges guaranteed all United States citizens and citizens of the San Antonio, Bexar County, Texas community.

5.      The conduct described here (and in other similar cases before this Court,) is *"strongly evincive of a situation of endemic corruption at the administrative levels of the San Antonio Police Department and/or within those governmental bodies, city and/or state, with oversight duties as to the SAPD operations.*[1]   The Court and a jury shall see in this case, as in other cases before this Court[2], Defendant City of San Antonio, through its police department's administrative staff, Internal Affairs Division and SAPD Chief's Citizens Action Review Board, has consistently failed and refused, and continues to fail and refuse, to conduct impartial investigations into this and other incidents of reported excessive force and filed false police

---

[1] Michael Levine, , Michael Levine Consulting, Verified Liability Expert Report, *Aubrety, et al. v. City of San Antonio, et al.,* SA05CA1011 (FB), "Evidence of Endemic Corruption at Administrative Levels of San Antonio Police Department: A Causation Factor," § H. pp 65-66. (June 12, 2006)

[2] *Rivera, et al v. City of San Antonio,* 06-cv-00235;*Castillo v. Lopez,* 06-cv-00367 ; *Shaw v. City of San Antonio, et al,* SA-06-CV-00751; *Aubrety, et. a. v. City of San Antonio et. al.* , SA-05-CA-1011; *Barr v. City of San Antonio, et. al.,* SA-06-CA-00261; *Owens v. Reed, et al,* SA-06-CA-00816, cases in which the undersigned is lead counsel; all cases cited here at FN2 are incorporated herein by reference as if fully stated verbatim as indicative of policy, pattern and practice so administered as to have become the custom of all Defendants herein, to wit: municipal custom, of consistently denying, on the basis of race and National Origin, minority citizens their rights pursuant to the United States and State of Texas Constitutions and federal and state statutes. 42 USC §§ 1981, 1983 and 1985(3); FIFTH, EIGHTH, THIRTEENTH AND FOURTEENTH AMENDMENTS, US Const. SEE ALSO, THIS PLEADING, <u>STATEMENT OF CUSTOM, POLICY AND PRACTICE: RECENT PRIOR ACTS</u>

reports resulting in the prosecutions of Plaintiff McCracken and other citizens who dare complain or attempt to ensure their constitutional rights.

6.      The visual images gleaned from the horrifying, near deadly event and the bullet-torn body of Plaintiff McCracken and the resulting painful disarray in the Plaintiff McCracken family's lives and homes not only reveal the Defendants' random, unprovoked and unauthorized acts, but also, provoke a stark, unabashed look at the illegal policies, customs and practices of Defendants San Antonio Police Department as acquiesced to and even encouraged by Defendants Mayor Phil Hardberger, City Manger Sheryl Skull and Chief of Police William McManus, Chief Executive Officers and policy maker of Defendant City on police matters.

7.      It was precisely these historical and well-documented policies, customs and practices which motivated and/or incited the Defendants to callously and cruelly disregard one of American society's well-established and basic principles of civil rights and civil liberties[3] - **the freedom from brutal and violent excessive and deadly force performed with the intent to punish and kill, all done under the color of law.**

8.      Defendants caused, severally and collectively, the dehumanizing, physically painful and emotionally debilitating incidents which form the basis of this lawsuit. The recognition, affirmation and vindication of Plaintiff McCracken's civil rights and civil liberties as a citizen of the State of Texas and the United States of America are sought by this action so as to dispel any future notions by Defendants

---

[3] It is well settled that the terms Civil Rights and Civil Liberties are defined in American jurisprudence as follow:

    (a.) *Civil Rights* - "The individual rights of personal liberty guaranteed by the Bill of Rights and the 13th, 14th, 15th, and 19th Amendments. Civil rights includes, especially, . . . the right to due process and the right to equal protection under the law."

    (b.) *Civil Liberties* – Those rights guaranteed in the Bill of Rights which the government is prohibited from infringing, the "Freedom from undue governmental interference or restraint," usually referring to the cited Amendments to the Constitution.   SEE *Blacks Law Dictionary, Abridged Seventh Edition, Copyright 2000,* p. 195

that Plaintiff McCracken, or any other Americans and citizens, can be so callously brutalized, punished, and denied his civil rights and civil liberties in contravention of federal and state constitutional rights and laws.

**B.      JURISDICTION**

9.      Jurisdiction is conferred on this Court by 28 U.S.C. § 1343 and its pendent jurisdiction over claims under Texas law. The recovery of compensatory and exemplary damages, injunctive relief and attorneys fees and cost are authorized by 42 U.S.C. §§ 1981, 1983, 1985(3) and 1988.

**C.      PLAINTIFF**

10.      Plaintiff McCracken, at the time of the horrific event and at the time of filing this suit, was and remains a resident of San Antonio, Bexar County, Texas.

**D.      DEFENDANTS**

11.      Defendant Phil Hardberger is the duly elected Mayor of the City of San Antonio. Defendant Mayor Hardberger is being sued in his official capacity only. As the Mayor of the City of San Antonio, Defendant Hardberger is charged by State of Texas constitutional and statutory law as well as the City of San Antonio City Charter and enacted ordinances with the legal duty requiring the Mayor, the City of San Antonio City Council, Defendant City Manager Sheryl Skully and Defendant Police Chief William McManus to set policy and procedures for the operation of a law enforcement agency, namely the San Antonio Police Department.  The responsibility for the selection, training, supervision, and operation of the police department, and its individual officers, was borne by the City of San Antonio, acting through its duly elected and selected administrative officers and representatives.  Service on Defendant Hardberger may be accomplished by serving the City Clerk of the City of San Antonio at City Hall, Municipal Plaza.

12.     Defendant Sheryl Skully is the appointed City Manager and, pursuant to the Texas Constitution and state statutes, Chief Executive Officer of Defendant City of San Antonio.

**E.      DEFENDANT SKULLY SUED IN HER OFFICIAL CAPACITY**

(a)     The responsibility for the selection, training, supervision operation, of the San Antonio Police Department, its Chief of Police and its individual officers, and discipline of individual officers, was and is borne by the Defendant Skully acting pursuant to state constitutional and statutory law and municipal city charter, ordinances and policy.

**F.      DEFENDANT SKULLY SUED IN INDIVIDUAL AND PERSONAL CAPACITY**

(b)     First, because of Defendant Skully's intentional, willful and/or negligence, gross negligence, nonfeasance and benign neglect of her official duties and responsibilities, to wit:

(1)     selection, training and supervision of the San Antonio Police Department Chief of Police, Defendant McManus, and San Antonio Police Department individual officers, including but not limited to Defendants Garza and Schiller;

(2)     establishment of policy, practice and custom of official conduct of and the use of force by the San Antonio Police Department;

(3)     municipal operation of a police force, namely, the San Antonio Police Department,

(4)     maintenance of the San Antonio Police Department, Office of Internal Affairs;

(5)     failure to discipline Defendant McManus and San Antonio Police Department individual officers;

and, second, because of Defendant Skully's omissions and failure to affirmatively act on the cold, calculated, contrived and illegal acts of all other individual Defendants, as below fully delineated, such activities having been condoned and ratified by Defendant Hardberger and Defendant McManus,

6

individually and collectively, and such illegal acts having been so practiced as to have become a custom, Defendant Skully is being sued in her individual and personal capacity. Defendant Skully shares personal responsibility for the numerous deaths and injuries to San Antonio citizens resulting from a pattern and practice, such having established a municipal custom, of consistently denying, on the basis of race and National Origin, minority citizens their rights pursuant to the United States and State of Texas Constitutions and federal and state statutes. Defendant Skully may be served with process at San Antonio City Hall, 100 Dola Rosa, San Antonio, Texas, 78205.

13.     Defendant William McManus is the Defendant City's Chief of Police appointed the City Manager, Defendant Skully. Defendant McManus performs his duty pursuant to the Texas Constitution and state statutes, city charter, ordinances and policy of Defendant City and he works at the pleasure of Defendant Skully.

## G.     DEFENDANT MCMANUS SUED IN HIS OFFICIAL CAPACITY

(a)     The responsibility for the selection, training, supervision and operation of the San Antonio Police Department, its Deputy and Assistant Chiefs of Police and its individual officers, and discipline of individual officers, was and is borne by the Defendant McManus acting pursuant to state constitutional and statutory law and municipal city charter, ordinances and policy.

## H.     DEFENDANT MCMANUS SUED IN INDIVIDUAL AND PERSONAL CAPACITY

(b)     First, because of Defendant McManus's intentional, willful and/or negligence, gross negligence, nonfeasance and benign neglect of his official duties and responsibilities, to wit:

(1)     selection, training and supervision of the San Antonio Police Department Deputy and Assistant Chiefs of Police and San Antonio Police Department individual officers, including but not limited to Defendants Garza and Schiller;

(2)     establishment of policy, practice and custom of official conduct of and the use of force by the San Antonio Police Department;

(3)     municipal operation of a police force, namely, the San Antonio Police Department,

(4)     maintenance of the Chief's Citizen Advisory Review Board;

(4)     maintenance and operation of the San Antonio Police Department, Office of Internal Affairs;

(5)     failure to discipline San Antonio Police Department individual officers;

and, second, because of Defendant McManus's omissions and failure to affirmatively act on the cold, calculated, contrived and illegal acts of all other individual Defendants, as below more fully delineated, such activities having been condoned and ratified by Defendant Hardberger and Defendant Skully, individually and collectively, and such illegal acts having been so practiced as to have become a custom, Defendant McManus is being sued in his individual and personal capacity. Defendant McManus shares personal responsibility for the numerous deaths and injuries to San Antonio citizens resulting from a pattern and practice, such having established a municipal custom, of consistently denying, on the basis of race and National Origin, minority citizens their rights pursuant to the United States and State of Texas Constitutions and federal and state statutes. Defendant McManus may be served with process at his place of employment, San Antonio Police Department, 214 West Nueva, San Antonio, Texas  78207.

14.     Defendant City of San Antonio is, pursuant to the Texas Constitution, state law, and city charter, a legally recognized and organized municipal corporation employing, by popular, vote the City Manager/CityCouncil with a weak mayor, elected at-large, and a City Council, the ten (10) members being elected via single-member districts. The City Council

employs, by majority vote, the City Manager who is charged with the administration and executive operation of Defendant City.   Incident to its duties as a municipal corporation, the City of San Antonio, organized and maintained, at all times material hereto, a police department, namely the San Antonio Police Department.   The responsibility for the selection, training, supervision, and operation of the police department, and its individual officers, was borne by the City of San Antonio, acting through its duly elected officials and selected administrative officers and representatives.  Service on Defendant City of San Antonio may be accomplished by serving the City Clerk of the City of San Antonio at City Hall, Municipal Plaza.

15.    Defendant Michael Garza, Badge # 0092, ("Defendant Garza") was, at all times material hereto, employed by Defendant City as a police officer.  Defendant Garza may be served with process at his place of employment, San Antonio Police Department, 214 West Nueva, San Antonio, Texas  78207.

16.    Defendant John E. Schiller, Badge # 0629, was, at all times material hereto, employed by Defendant City as a police officer.  Defendant Schiller may be served with process at his place of employment, San Antonio, 214 West Nueva, San Antonio, Texas  78207.

I.    **FACTS**

17.    Plaintiff Michael McCracken, 26, African-American male, single, is the father of three (3) children, Amiya, 8, female; Akiyah, 2, female; and, Michael, 4 mos, male. Plaintiff McCracken presently resides 337 Gulf St., San Antonio, Texas, but on the date he was shot by Defendant Garza; he lived on the Southeast corner at 902 Canton St. and Rio Grande St.  At the time of the shooting, Plaintiff McCracken's youngest sister, Stephanie McCracken, lived at 337 Gulf St. approximately five (5) blocks from at 902 Canton St.

18.     On the evening of March 9, 2006 at approximately 7:30 PM, Plaintiff McCracken and Dominic Daniels, a friend of the McCracken family, were at Plaintiff McCracken's home. Plaintiff McCracken and Daniels left the Canton street address and drove in Daniels' rented car to the Gulf Street address. Angel Trevino, mother of Michael, 4 mos, were at Stephanie McCracken's house at 337 Gulf St when Plaintiff McCracken and Daniels arrived.  Plaintiff McCracken went into his sister's house to retrieve a Mac 90 rifle that he purchased at a gun show in June off Loop 410 and Broadway in San Antonio. Plaintiff McCracken wanted to retrieve the gun because he felt he needed protection from drive-by shooters that have frequented the vicinity in which he lived and because his home had been shot up by drive-by shooters at least three times. There exists police reports of one or more of these drive-by shooting incidents.

19.     Plaintiff McCracken then returned to the rented vehicle rented and driven by Daniels. He entered, holding the rifle and the magazine separately in his right hand , the passenger side of car and put the gun to his right side on the floor. Daniels began driving East on Gulf St., turning right onto Polaris St. going South. Daniels then turned left, going East, on Canton St. Daniels drove several blocks, stopping at Rio Grande St. From that point, Plaintiff McCracken's home is on the Southeast corner. Plaintiff McCracken looked to his right, South down Rio Grande St. and saw a police car parked partially on the East side of Rio Grande St. half way down the street from Canton and Rio Grande where Daniels has stopped at the stop sign. The police car was parked partly in the street and partly in the driveway of Plaintiff McCracken's home.

20.     When Plaintiff McCracken saw the police car, he was alarmed and said to Daniels something to the effect, "I wonder why the police are there." Plaintiff McCracken, concerned that he had the gun in the car and not knowing why the police car was parked partly in the street and partly in his driveway, Plaintiff McCracken told Daniels to drive past his house a couple doors down to another

friend's home at 923 Canton St. so that he could take the gun and leave it there. He trusted the Dennis family to safeguard the gun. James Dennis is one Plaintiff McCracken's friends residing at the 923 Canton address. Daniels turned into the drive-way at 923 Canton St.

21.     Plaintiff McCracken got out of Daniel's car to take the rifle into the house, intending to go through the back door as the Dennis' grandmother lived in the front of the house and she was always ill. The neighborhood people always went to the back door.

22.     After getting out of the car and while starting to walk North down the driveway to the rear of the house, Plaintiff McCracken noticed, from the left side of his face, two figures wearing dark clothing running eastwardly toward him.

23.     Plaintiff McCracken, frightened and not knowing who the figures were running toward him, immediately took off running, holding the rifle and the magazine separately in his right hand, North down the drive-way.   The figures running toward him did not identify themselves to Plaintiff McCracken as police officers. The figures (persons) were running toward him did not identify themselves to Plaintiff McCracken at all.  There were no commands to stop running.  There were no commands at all from those running toward Plaintiff McCracken. While running, Plaintiff McCracken did hear what he thought was a police radio, indicating to Plaintiff McCracken that the persons, now, running after him were police officers. Plaintiff McCracken, however, was not sure of his thoughts, and he knew that if those persons were police officers, he needed to rid himself of the gun or die.

24.     As Plaintiff McCracken approached the rear of the house, he turned to his left to jump over a wooden fence. Before reaching the fence, however, and knowing he needed to get the gun and the magazine out of his hand, he threw with all his might the gun and the magazine far to the north over the fence.  Plaintiff McCracken's intent was to then jump over the fence and run west away from where he threw the gun and the magazine, and, then left again, to go South to his house.

25.     With the gun and the magazine safely out of his right hand and away from him, Plaintiff McCracken then leaped to jump over the fence. While in mid-air of his jumping, Plaintiff McCracken heard the gunshot. His body fell to the top of the wooden picket fence, essentially impaling his arm and body on the fence. Plaintiff McCracken did not feel the bullet as his arm went numb. His body was hanging by his right arm on the inside of the wood picket fence.

26.     Plaintiff McCracken knowing something was not right with his arm and being impaled on wooden picket fence, turned back and looked at the person who he, now sure, was a policeman, and said, "Sir, you shot me." The police officer, later identified as Defendant Garza, saying nothing, then took off running south back up the driveway.

27.     Plaintiff McCracken, still impaled on the wood picket fence turned his head back to the west, and he saw another person he thought was a police officer, yet unidentified, but presumably Defendant Schiller.   Defendant Schiller said to Plaintiff McCracken, "don't move."    Plaintiff McCracken, caught on the fence, said to Defendant Schiller, "the other guy shot me in the back."

28.     Plaintiff McCracken was then treated at the scene and taken by EMS to United States Army Brooke Army Medical Center, the closest medical trauma unit to the location of the police-involved shooting at 923 Canton St.

29.     Upon arrival at Brooke Army Medical Center, under arrest and police escort, Plaintiff McCracken was rushed into the emergency room and treated, including but not limited to the installation of an IV and administered powerful pain medication for the gunshot wound to the rear of his left arm.

30.     Within an hour of Plaintiff McCracken's admission to the hospital, members of the SAPD, presumably detective investigators arrived at Brooke Army Medical Center's emergency room. Instructions were given that Brooke Army Medical Center medical providers leave the room. The

Brooke Army Medical Center medical providers did leave the room, whereupon the SAPD, presumably, detective investigators, began to interrogate Plaintiff McCracken.

31.     The SAPD, presumably detective investigators, began the interrogation of Plaintiff McCracken despite the facts that he had just been shot, was heavily medicated with powerful pain medicine, and strapped to IV equipment in an emergency room facility. One or more of detective investigators, yet unidentified, read Plaintiff McCracken his Miranda rights and proceeded to take a statement from him and/or question him regarding the incident which led to the shooting.

32.     With his knowledge of the many police-involved shootings and in panicking fear of his life, knowing that he had a gun and a magazine separate from, Plaintiff McCracken just wanted to get away.

33.     Plaintiff McCracken wanted feverishly to dispose himself of the gun because he felt that if the police found the gun on him, he would surely die and because he knew from other reports how punitive and vindictive SAPD police could be.

34.     On information and belief, at the scene of the police-involved shooting at 923 Canton St., other police officers interrogated and questioned eyewitnesses to the shooting and other persons who happened on the scene after the shooting.

35.     On information and belief, the following events happened prior to the chase of Plaintiff McCracken:

(a)     Defendants Garza and Schiller were on the scene at 904 Canton resulting from a police chase of Terrick Allsbrook, also arrested that night having been found in the garage at 917 Canton St., right next door to the east of 923 Canton St.;

(b)     Terrick Allsbrook was being chased on foot by Defendants Garza and Schiller, and he was ultimately captured and arrested; and

(c)     Plaintiff McCracken and Daniels were in no way involved in that chase or incident which gave Defendants Garza and Schiller actions in pursuit of Terrick Allsbrook.

36.     On information and belief, the following events happened at the scene after Plaintiff McCracken was shot and taken to Brooke Army Medical Center:

(a)     SAPD conducted a perimeter search of the back yard at 923 Canton St. In that search,

(b)     SAPD officers found the rifle thrown by Plaintiff McCracken, and, on information and belief, they found it at least 30 - 40 feet north from where Plaintiff McCracken was impaled on the fence.

(c)     On information and belief, when SAPD officers found the rifle, they also found the magazine to the rifle within feet of the rifle. The magazine was not attached to or in the rifle.

(d)     SAPD officers attempted to get witnesses to give incriminating statements against Plaintiff McCracken; and

(e)     SAPD officers took one or more witnesses to the police station where they attempted to coerce said witnesses to state Plaintiff McCracken was, to wit:

(1)     a drug dealer or drug kingpin;

(2)     a gang member;

(3)     attempting to break into the front door at and burglarize the home at 923 Canton St;

(4)     preparing to do a drive-by shooting at 923 Canton St. *(Plaintiff McCracken lived only four houses from 923 Canton St. at 904 Canton St.)*; and,

(5)     etc., etc.

37.     On information and belief, the SAPD officers and detectives were in active concert, CYA mode, to ascertain evidence by which to justify the police-involved shooting of Plaintiff McCracken.

38.     On information and belief, whenever there is a police-involved shooting, a SAPD internal affairs investigation is automatically commenced.

39.     On information and belief, there was an investigation commenced by the SAPD internal affairs into the police-involved shooting of Plaintiff McCracken.

40.     On information and belief, the SAPD Internal Affairs Division and assigned IA investigators did not interview Plaintiff McCracken or any eyewitness or person who arrived subsequent to the shooting prior to issuing a decision that Defendant Garza's shooting of Plaintiff McCracken was *"justified – no disciplinary action required/taken."*

41.     On information and belief, Defendant Garza has been involved in at least one other police-involved shooting, which, too, was ruled *"justified."*

42.     On information and belief, there was neither a SAPD officer, nor any other person, bystander nor citizen, in the position or standing in direction toward which Plaintiff McCracken was running.

43.     On information and belief, no a SAPD officer, including, Defendants Garza or Schiller, sounded a warning or issued a command for Plaintiff McCracken to cease and desist or halt.

44.     On information and belief, no a SAPD officer, including, Defendants Garza or Schiller, attempted to physically subdue or capture the Plaintiff McCracken.

45.     Upon release from the hospital, Plaintiff McCracken was arrested and charged with violations of the Texas Penal Code and/or criminal statutes, to wit: Attempted Capital Murder of a Police Officer and Felon In Possession of a Fire Arm.

46.     Plaintiff McCracken, to his financial detriment and to gain release from jail, was required to post bond in the amount of $266,500. Neither Plaintiff McCracken nor his family was financial capable of posting the excessive bond.  Plaintiff McCracken, therefore, remained incarcerated in the Bexar County Jail for approximately four months before his release on the $16,000 posted bond for the charge, Felon In Possession of a Fire Arm.

47.     On or about May 30, 2006, the Bexar County District Attorney dismissed the Attempted Capital Murder of a Police Officer charge against Plaintiff McCracken specifically citing, to wit:

**\*Case St: _ 0199 05 30 2006 CASE CLOSED**

**\*Disp St: _ 0611 05 30 DSMD-INSF EVIDENCE**

The computerized dismissal document is attached hereto, marked, Exhibit 1; same being incorporated herein as if fully set forth verbatim.

48.     On information and belief, the Bexar County District Attorney's notation, **\*Disp St: _ 0611 05 30 DSMD-INSF EVIDENCE,** means the criminal case was dismissed because the Bexar County District Attorney ***had insufficient or even no evidence to prove in a criminal prosecution*** that Plaintiff McCracken attempted to murder a police officer.

49.     On information and belief, the Attempted Capital Murder of a Police Officer charge was based on the false reports and statements by Defendants Garza and Schiller that Plaintiff McCracken pointed a gun at the officers or intended to murder or injure a public servant.

50.     Plaintiff McCracken, to his financial detriment, was required to retain Counsel to defend against the false criminal charges and prosecution by the Bexar County District Attorney. Attorneys fees incurred for the criminal defense is $75,000.

51.     Three (3) photographs of Plaintiff McCracken are attached hereto respectively marked Exhibits 2, 3 and 4; same being incorporated herein as if fully set forth verbatim, to wit:

(a)     Photo # 1 is Plaintiff McCracken.

(b)     Photo # 2 depicts the back of Plaintiff McCracken, and it indicates where the bullet from Defendant Garza's gun entered, from the back, Plaintiff McCracken's left rear arm. The bullet wound is almost exactly in the middle of the back of Plaintiff McCracken's left arm. The wound is only approximately four (4) to five (5) inches to the left of Plaintiff McCracken's torso.

(c)     Photo # 3 depicts Plaintiff McCracken's left arm harnessed by medical equipment and strings to hold Plaintiff McCracken's fingers in place and to prevent his fingers from closing, fist like. Plaintiff McCracken's left arm suffers permanent paralyses, and he is unable to use the left arm.

52.     The conduct of the Defendant San Antonio Police Department and Defendants Garza and Schiller, as well as Defendants Skully and McManus, was reprehensible, deplorable and unconscionable and said conduct constitutes violations of the Texas Revised Statutes, including Texas Penal Code statutes, aggravated assault with a deadly weapon, injury to a detainee, the United States and Texas Constitutions and federal criminal statutes, to wit:

(a) **42 USC § 1981 (Equal Rights Under the Law as is enjoyed by White citizens);**

(b) **42 USC § 1983  (Violation of Rights Under the Color of Authority); and,**

(c) **42 USC § 1985(3) (Conspiracy after the fact to cover-up true facts of the police-involved shooting).**

## J.     ALLEGATIONS

53.     As a result of the above and foregoing conduct of Defendants, individually and collectively, Plaintiff McCracken suffered and continues to suffer, great mental anguish, anxiety, humiliation and severe and permanent physical and emotional injuries to his body, accompanied by excruciating pain and suffering as Defendant Garza's bullet remains lodged in his body.

54.     The emotional injuries include but or not limited to nightmares, sleeplessness, insomnia, and constant fear of experiencing death and other killing, beatings and threat of loss of life by Plaintiff McCracken and his family, including to his minor children.

55.     As a direct causal result of the detainment, and injuries and death, Plaintiff McCracken has suffered severe and excruciating pain, injuries to his bodies, both mental and physical, causing economic and medical and other costs, and will, in all probability, continue to suffer damages in the future as a result of the conduct of Defendants.

55.     As a direct causal result of the Defendants' illegal actions, Plaintiff McCracken has incurred medical costs estimated to be at least $60,000. Claim for said damages are here made.

56.     Defendants, individually and collectively, are guilty of common and statutory law negligence in the shooting of Plaintiff McCracken directly resulting from Defendant Skully and McManus' negligent failure to adequately train and supervise Defendants Garza and Schiller in the use of force and the use of deadly force, said negligence resulting in the shooting of Plaintiff McCracken and his permanent injuries. Claim for said damages are here made.

57.     Defendants, individually and collectively, are guilty of common and statutory law gross negligence in the shooting of Plaintiff McCracken directly resulting from Defendant Skully and McManus' negligent failure to adequately train and supervise Defendants Garza and Schiller in the use of force and the use of deadly force, said negligence resulting in the shooting of Plaintiff McCracken and his permanent injuries. Claim for said damages are here made.

58.     The in the back or rear shooting of Plaintiff McCracken while fleeing police, a circumstance that could have resulted in Plaintiff McCracken's death by just four (4) to the right of his left arm (bullet would have penetrated his heart), was so grossly negligent, such gross negligence coupled with and resulting from Defendant Skully and McManus' negligent failure to adequately train

and supervise Defendants Garza and Schiller in the use of force and the use of deadly force, that it would shock the conscience of any reasonably prudent person. Such gross negligence shows the Defendants' conscious and callous disregard for the rights and life of any citizen of the City of San Antonio, in general, and Plaintiff McCracken's rights and life in particular. Defendants Skully, McManus, Garza and Schiller, individually and collectively, should be made to suffer exemplary and punitive damages so as to make an example of them in order that such gross conduct will immediately cease and innocent citizens will not be killed, maimed and/or permanently injured as have Plaintiff McCracken and many other San Antonio citizens. Claim for said exemplary and punitive damages are here made.

59.     More over, the individual Defendants' gross negligence as described in ¶ 58 is but one example that shows the Defendants', including Defendant City, custom, policy and practice to so callously brutalize, punish, and deny citizens their civil rights and civil liberties based on National Origin, African-American and Mexican-American, and race, BLACK AND BROWN, in contravention of federal and state constitutional rights and laws. Claim for exemplary and punitive damages against the individual Defendants for administration of this custom, practice and policy is here made.

60.     At the time and place as above stated, the Defendant Garza and Schiller were acting in their official capacities as police officers of the San Antonio Police Department, and by their intentional acts, under the color of authority, and official oppression violated the civil rights of and caused injury to and deprived Plaintiff McCracken of his constitutional rights under the FOURTH, FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES and under 42 U.S.C. §§ 1981 and 1983 and 1985(3).

61.     At the time of the event in question, Defendants City of San Antonio, Skully and McManus, individually and collectively, and the San Antonio Police Department, through its intentional

acts of nonfeasance, omissions, negligent hiring, failure to train and failure to discipline deprived Plaintiff McCracken of his constitutional rights under the FOURTH, FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE CONSTITUTION OF THE UNITED STATES and under 42 U.S.C., §§ 1981, 1983 and 1985.   Defendants City of San Antonio, Skully and McManus, individually and collectively, and the San Antonio Police Department, are guilty of the following acts:

(a) negligence in the hiring, training, supervising and maintaining public servants of the quality and character of the Defendant police officers;

(b) gross negligence in entrusting deadly firearms and equipment used as weapons and the keeping of the peace to such persons; and,

(c) placing public servants in positions where they can create and cause such deprivation of rights and liberties and endanger citizens that they are by oath and employment required, constitutionally and by statute to protect.

63.     All the Defendants' negligence and gross-negligence proximately caused the injuries and damages complained of here by Plaintiff McCracken.

64.     As a result of the violation of Plaintiff McCracken's civil rights and civil liberties, as herein set out, and the wanton, reckless and wrongful disregard of his live, safety and reputation by action of Defendants, Plaintiff suffered pain and to continues to suffer severe anxiety, mental anguish, physical injuries, humiliation, loss of love and consortium, charges for hospital and medical treatment, present and future, as well as present and future mental pain and suffering. In all reasonable probability, all such damages will continue into the future.

65.     By reason of Defendants' illegal acts, Plaintiff McCracken has been greatly injured and has been brought into public scandal, disrepute, and disgrace, and has been greatly hindered and

prevented from following and transacting his affairs and business and, as a result thereof, has suffered great emotional trauma and harm, all to his damage.

66.    Plaintiff McCracken's arrest was accompanied by violence and force far in excess of that necessary to effect his detainment, resulting in severe and painful permanent injuries.

## K.    AGGRAVTED ASSAULT AND BATTERY WITH DEADLY WEAPON

67.    Plaintiff McCracken was brutally assaulted and shot by Defendant Garza and as if shot by all other Defendants in complicity; and, said acts have been condoned and adopted by all Defendants. Said acts are consistent with the custom, policy and practice of the Defendants to punish and kill, under the color of law, citizens without the due process of law.

68.    Such assaults were not consented to by Plaintiff McCracken.

## L.    FAILURE TO INTERCEDE

69.    During the time Plaintiff McCracken was being pursued and assaulted, no other law enforcement official, including any one of the individual Defendants on the scene, all of whom are not now known, fulfilled their legal duty to intercede to prevent the commission of crime occurring before their very eyes.

70.    Defendants and other unknown officers had an opportunity to intercede on behalf of Plaintiff McCracken, both prior to and during the vicious assault and to prevent Defendant Garza from subjecting Plaintiff McCracken to deadly and excessive force and an unlawful and unreasonable seizure of his persons in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. section 1983.

71.    As a direct and proximate result of Defendants' deliberate and intentional failure to intercede on behalf of Plaintiff McCracken and prevent the violation of his constitutional rights, Defendants committed, under color of law and under thier authority as law enforcement officials,

violations of the Plaintiff' rights to equal protection of the laws as guaranteed by the FOURTEENTH AMENDMENT. Plaintiff McCracken suffered grievous bodily harm and mental anguish and was deprived of his right to be secure in his and her person, against unreasonable seizure of his person and excessive use of force, even deadly force, in violation of the FOURTH AND FOURTEENTH AMENDMENTS OF THE CONSTITUTION OF THE UNITED STATES and 42 U.S.C. §§ 1981 and 1983.

## M.    CONSPIRACY TO VIOLATE RIGHTS

72.    Subsequent to the above described brutality, the Defendants, individually and collectively, did the following acts:

a.    agreed and acted to intentionally and /or negligently submit false and incomplete incident reports, statements and testimony to support and corroborate the fabricated their illegal actions as above described;

b.    agreed and acted with others to use force that was excessive and deadly;

c.    agreed and acted with others to punish Plaintiff McCracken for having allegedly committed a criminal act, which they knew was untrue, by attempting to kill or execute him without the due process of law;

d.    engaged in conduct to fabricate probable cause against Plaintiff McCracken to justify the shooting by coercing witnesses to make false statements against Plaintiff McCracken;

e.    instituted an internal affairs investigation designed only to, and did, cover-up the illegal acts of Defendants Garza and Schiller; and,

f.    agreed not or failing to interview Plaintiff McCracken and witnesses who they knew possessed relevant that would tend to exonerate Plaintiff McCracken.

73.     As a direct and proximate result of the conspiracy between Defendants and others as afore described, Plaintiff McCracken was deprived of his right to be free from unreasonable and unlawful seizure, equal protection of the laws, due process rights, be free from arbitrary and unreasonable action which are secured under the FOURTH, FIFTH, THIRTEENTH AND FOURTEENTH AMENDMENTS to the UNITED STATES CONSTITUTION and protected by 42 U.S.C. §§ 1985(3), 1981 and 1983.

74.     Defendants City, Skully and McManus are liable for the conduct of Defendants Garza and Schiller while acting within the course and scope of their employment. Defendants City, Skully and McManus instituted, authorized, ratified and/or approved the conduct exhibited by the Defendants Garza and Schiller. Such conduct constituted the deprivation of the civil rights and civil liberties of the Plaintiff McCracken.

75.     Additionally, Defendants City, Skully and McManus instituted policies which create and created a climate in which the type of violent, brutal and abusive behavior exhibited by said individual Defendants Garza and Schiller was allowed to occur. Defendants City, Skully and McManus, in effect, ratified and approved such violent behavior by Defendants Garza and Schiller and other police officers by failing to take appropriate disciplinary measures and by ignoring abusive conduct on the part of their police officers, both prior to the event and thereafter.

76.     Additionally, Defendants City, Skully and McManus ratified and condoned the abusive and violent behavior of its police department and its Defendant police officers, by

(a)     failing to institute appropriate disciplinary systems;

(b)     allowing this abusive and violent brutality to go unpunished;

(c)     allowing such violent police officers, including Defendants Garza and Schiller, to remain in Defendants City, Skully and McManus' employ;

(d)     failing to initiate a legal investigation into the illegal acts perpetrated against the Plaintiff McCracken; and

(e)     failing to take immediate, or any, remedial action against the Defendants Garza and Schiller for illegal acts perpetrated against the Plaintiff McCracken.

77.     Additionally, the official policy authorizing, ratifying, allowing and/or approving such violent and abusive conduct is so common and settled so as to constitute a custom that fairly represents municipal and/ or local government policy.

78.     The actions described in excruciating detail in ¶¶ 1-77 and the allegations herein stated were undertaken by the individual Defendants in their capacities as final decision-makers pursuant to authority granted to them by the people of the State of Texas and the City of San Antonio; such actions represented official policy and practice.

79.     Defendants City, Skully and McManus, collectively or individually, have failed, contrary to law and policy, to this date, to take any remedial action exhibiting not only their conscious indifference and callous disregard for constitutional rights of the Plaintiff McCracken and all other taxpayers, but also their conscious indifference and callous disregard for the constitutional rights of any American citizen and citizens of the Texas including the right to be free from excessive and deadly force and brutality with the intent to punish and hurt rather than serving and protecting as is their constitutional and solitary duty.

## N.     STATEMENT OF CUSTOM, POLICY AND PRACTICE: RECENT CRIMINAL PRIOR ACTS DENAIL OF APPROPRIATE ADMINSTRATIVE INTERNAL AFFAIRS INVESTIGATIONS AND ALLEGATIONS PERTAINING THERETO

80.     On information and belief, Defendant City and numerous other Defendant SAPD police officers, here, and in several other federal civil rights, 42 USC §§ 1981, 1983, 1985(5) and 1988,

actions[4], known and unknown, pending in United States District Court Western District of Texas, San Antonio Division, have participated in numerous police-involved shootings and beatings resulting in numerous deaths and permanent physical and emotional injuries to San Antonio citizens[5] and in violation of federal and state constitutional and statutory law, all such laws herein previously stated in the style and within the content of this pleading.

81.     On information and belief, Plaintiff McCracken sought, as have other injured citizens, immediate remedial, disciplinary and non-disciplinary actions against the Defendant police officers in this and other internal affairs complaints pending a full investigation; said requests has gone unanswered and no administrative, remedial and/or disciplinary actions were initiated against the Defendant police officers here or in any other such internal affairs complaints.

82.     On information and belief, Defendants City, Skully and McManus administer the San Antonio Police Department, Division of Internal Affairs, and the Chief's Citizens Advisory Review Board, such board created pursuant to city ordinance.  Defendants City, Skully and McManus operate said board and administer the internal affairs division to insure that most, in not all, internal affairs investigations result in "no discipline" to the police officers against whom internal affairs complaints are filed by San Antonio citizens.

83.     Defendants City, Skully and McManus and SAPD officers assigned to the internal affairs division accomplish this outrageous scam by doing one or more of the following acts, to wit:

---

[4] Plaintiff seeks the Court take judicial notice of all such actions, and Plaintiff incorporates herein all such actions, to the extent that they allege a custom, policy and practice of Defendant City and SAPD officers to consistently deny, on the basis of race and National Origin, minority citizens their rights pursuant to the United States and State of Texas Constitutions and federal and state statutes, by reference as if each was fully stated included and included herein.

[5] SEE FN2 for all such cases in which the undersigned represents San Antonio citizens and the causes of action in the records of this Court as maintained by the United States District Court.

(a)     discouraging, verbally, citizens ("complainants") from filing internal affairs complaints against police officers;

(b)     refusing to allow complainants to state, in their own words, the complained of offensive and abusive conduct of the officer(s) against whom the complaints are filed;

(c)     writing and or typing from the spoken words of the complainants the actual complaint;

(d)     phrasing the complainants' spoken words of police officer's(s') offensive and abusive conduct in a manner that yields the complaint ineffective and ineffectual as a complaint;

(e)     insisting that the complainants signed the typed words of the reporting internal affairs investigator rather than a statement reflecting their exact words and intent of the complaint against the officer(s);

(f)     refusing to allow complainants to have and posses copies of their signed complaints:

(g)     denying, even after complainants' insist, complainants the opportunity to have legal representative, counsel or a personal representative in the investigation room while the complainants are giving, verbally, the complaints to the investigative officer;

(h)     stating to complainants that policies and regulations do not allow a legal representative, counsel or a personal representative in the investigation room while the complainants are giving, verbally, the complaints to the investigative officer, using such phrases as follow, to wit:

(1) The City of San Antonio/Police Collective Bargaining Agreement does not allow a legal representative, counsel or a personal representative in the investigation room while the complainants are giving, verbally, the complaints to the investigative officer;

(2) Our policies do not allow a legal representative, counsel or a personal representative in the investigation room while the complainants are giving, verbally, the complaints to the investigative officer;

(3) City ordinances do not allow a legal representative, counsel or a personal representative in the investigation room while the complainants are giving, verbally, the complaints to the investigative officer; and

(4) The Chief of Police does not allow a legal representative, counsel or a personal representative in the investigation room while the complainants are giving, verbally, the complaints to the investigative officer;

(5) The Chief's Citizens Action Review Board Chairman, a top ranking SAPD official, does not allow a legal representative, counsel or a personal representative in the investigation room while the complainants are giving, verbally, the complaints to the investigative officer;

(6) etc., etc., anything to prohibit complainants from having does not allow a legal representative, counsel or a personal representative in the investigation room while the complainants are giving, verbally, the complaints to the investigative officer;

(i) refusing, intentionally, to interview and take statements, even though such statements are flawed as above-described, from eyewitnesses of events complained of;

84. On information and belief, the San Antonio community has lost confidence in the Defendant Police Chief McManus and San Antonio Police Department, Internal Affairs Division, as said Internal Affairs Division has rendered "no action required" or "no disciplined recommended" decision on this and other investigations of police and official mis-conduct

complaints, whether filed or automatic because there were police-involved shootings. Defendants, individually and collectively, have instituted an internal affairs procedure that has rendered decisions on most, if not all, citizen excessive force, police abuse and racial profiling complaints as unsustainable or untrue.

85.     On information and belief, Plaintiff McCracken filed, on or about November 9, 2006, criminal charges against Defendants Garza and Schiller for attempted murder, filing of false police reports, official oppression, injury to a detainee, aggravated assault with a deadly weapon and deadly conduct, violations of the civil rights of a detainee, all crimes in the Texas Penal Code.

86.     On information and belief, the United States Department of Justice, Civil Rights Division, Criminal Unit, has commenced a criminal civil rights violations investigation of the shooting of Plaintiff McCracken by Defendants as well as the same such investigation of one or more other Defendant City police-involved shootings in the year 2006.

87.     On further information and belief, the United States Department of Justice (DOJ) Civil Rights Division, Criminal Unit, may be investigating the plausible custom and practice of the Defendant City to commit criminal civil rights violations resulting in serious injury and death to innocent citizens of the San Antonio and Bexar County metropolitan area.

## O.    STATE OF TEXAS STATUTORY NOTICE REQUIREMENT AND ALLEGATIONS PERTAINING THERETO

88.     Pursuant to the Texas Local Government Code and the Texas Tort Claims Act, Defendant City of San Antonio, through Defendants Mayor Phil Hardberger, City Manager Sheryl Skully and Defendant William McManus and City Attorney Michael Bernard, Chief of and the San Antonio City Clerk, was given notice of the Plaintiff Michael McCracken's claims

on November 1, 2006. Defendant City of San Antonio acknowledged said notice of claim on

November 2, 2006.

89.    On information and belief, Defendant City maintains a third-party contractual

relationship with a private company or companies that constitutes the Defendant City's outside

risk manager to whom all notices of injury required, pursuant to state law,  .

**P.**    **INJUNCTIVE RELIEF**

90.    Plaintiff, nor any other citizens of Texas, have any other remedy at law to protect

themselves from the Defendants' unprovoked attacks; brutality; deadly and excessive force; wanton and

brutal punishment; assault and battery; official oppression; conspiracy and violation of his federal and

state protected civil rights *__but__* to seek the intervention of the federal court requiring Defendant City and

the individual Defendants, jointly, and severally, to compensate Plaintiff McCracken for his injuries and

requiring, through permanent injunctive relief, Defendant City, for the protection of the citizens and

police officers, to

> **(a)    install in every SAPD vehicle/car/unit in the SAPD patrol and unmarked fleet
> perpetually running video equipment and to maintain the images captured and
> depicted by such video equipment in every stop of a citizen for a period not less than
> five (5) years; and**
>
> **(b)    outfit every SAPD officer with audio and video personal equipment, to wit: lapel
> cameras to record, visually and in sound, all police contact with citizens and to
> retain record thereof for a period not less than five (5) years.**

91.    As a direct causal result of the Defendants' illegal actions, Plaintiff was required to

employ the legal services of James W. Myart, Jr., Attorney-At-Law, of James W. Myart, Jr., P.C., for

the prosecution of his claims against all Defendants, jointly and severally; same causing Plaintiff

McCracken additional damages, claim for which is made and authorized by law and or the injunctive relief requested herein.

## CAUSES OF ACTION

**Q.**     **FIRST CLAIM FOR RELIEF**

92.     The facts and allegations contained in Paragraphs 1 through 91 are incorporated herein by reference, the same as if fully set forth verbatim.

93.     **42 U.S.C. §1981.**  Defendants, jointly and severally, intentionally and or recklessly denied the Plaintiff the full and equal benefit of all laws, including due process, and proceedings for the security of person and property as is enjoyed by white citizens, including the right to be free from unlawful seizure, due process, and cruel and unusual punishment pursuant to the FOURTH, FIFTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, all to Plaintiff's damages as alleged herein.

**R.**     **SECOND CLAIM FOR RELIEF**

94.     The facts and allegations contained in Paragraphs 1 through 91 are incorporated herein by reference the same as if fully set forth verbatim.

95.     **42 U.S.C. §1983.**  Defendants, acting under color of state law, deprived Plaintiff of rights, privileges, and immunities secured by the Constitution and laws of the United States, including those rights secured by the FOURTH, FIFTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, by performing the following acts:

a.     Subjecting Plaintiff McCracken's and Plaintiff to unreasonable excessive force, great bodily injury and possible death;

c.     Interfering with Plaintiff McCracken's right to seek redress for his injuries by covering up law enforcement misconduct and filing false police reports.

d.      Failing to intercede to prevent violation of law.

96.     All such acts were performed against the Plaintiff on the basis of his race, black, and National Origin, African-American.

**S.      THIRD CLAIM FOR RELIEF**

97.     The allegations contained in Paragraphs 1 through 91 are incorporated herein by reference the same as if fully set forth verbatim.

98.     **42 U.S.C. §1985(3).**   Defendants, two or more of them, conspired with other persons for the purpose of:

a.      Depriving Plaintiff McCracken of equal protection of the law;

b.      Depriving Plaintiff McCracken of due process of law;

c.      Filing false police reports;

d.      Covering up his misconduct against Plaintiff McCracken; and

e.      Hindering, the constituted authorities from giving or securing equal protection and due process of law to all persons on the basis of race, all to Plaintiff McCracken's damage as alleged herein.

**T.      FOURTH CLAIM FOR RELIEF**

99.     The facts and allegations contained in Paragraphs 1 through 91 are incorporated herein by reference the same as if fully set forth verbatim.

**U.      INJUNCTIVE RELIEF**

100.    Pursuant to 42 USC §§ 1981 and 1983, Defendants are liable for and must be enjoined from committing such illegal acts of punishment, brutality and injuries against any American citizen or person on the basis of race or color, few or brown and black, National Origin, African-American or Mexican-American.

101.   The protection of Plaintiff, and every other American citizen or person of color, from illegal acts of punishment, brutality and injuries can only plausibly be accomplished by outfitting every SAN ANTONIO POLICE DEPARTMENT'S vehicle/car/unit in the SAN ANTONIO POLICE DEPARTMENT patrol fleet with a perpetually running video camera and to maintain the images depicted in every scene of a weapons discharge by an officer for a period not less than five (5) years. The purpose is dual protection, (a) for the Police officers, as they attempt to enforce the law and protect the citizens and (b) for the citizens who, because of the individual Defendants' custom and practice, may or will be subjected to brutality and excessive and deadly force as has been and is the pattern of the San Antonio Police Department and its Police officers.

## V.   FIFTH CLAIM FOR RELIEF – PENDANT STATE CLAIMS

102.   The facts and allegations contained in Paragraphs 1 through 91 are incorporated herein by reference the same as if fully set forth verbatim.

103.   As a pendant state cause of action, Defendants, by acts and/or omissions and under the color of state law, intentionally, knowingly and/or recklessly violated the Plaintiff McCracken state constitutional right to be free from discrimination, denial of due process and equal protection under the Texas state constitution on the basis of race, black, and National Origin, African-American. TEXAS CONSTITUTION, BILL OF RIGHTS.

104.   As a pendent state cause of action, at all times material and relevant herein, Defendants, by acts and/or omissions and under the color of state law, intentionally, knowingly and/or recklessly caused, or threatened to cause, bodily injury and death to Plaintiff McCracken. The Defendants' actions constituted assault. The force used against Plaintiff McCracken was unreasonable and constituted assault and battery under the laws of the State of Texas. TEXAS PENAL CODE, TEXAS LOCAL GOVERNMENT CODE AND TEXAS CIVIL PRACTICE AND REMEDIES CODE.

105.    At all times material, Defendants individually and in his official capacity, jointly and severally, intentionally, knowingly and/or recklessly and/or negligently caused, or threatened to cause, bodily injury to Plaintiff McCracken in violation of Texas law prohibiting the violation of the civil rights of a detainee. TEXAS PENAL CODE.

106.    At all times material, Defendants individually and in his official capacity, jointly and severally, intentionally, knowingly and/or recklessly and/or negligently caused, or threatened to cause, bodily injury to the Plaintiff in violation of Texas law prohibiting official oppression. TEXAS PENAL CODE.

107.    As a pendent state cause of action, at all times material and relevant herein, Defendants, by acts and/or omissions and under the color of state law, intentionally, knowingly and/or recklessly caused, or threatened to cause, bodily injury to the Plaintiff and failed to intercede to stop such criminal activity. TEXAS PENAL CODE.

108.    As a pendent state cause of action, at all times material and relevant herein, Defendants committed an intentional tort against Plaintiff McCracken by the misuse of Defendant City's equipment, to wit: a gun, resulting in injury to the Plaintiff. TEXAS CIVIL PRACTICE AND REMEDIES CODE.

109.    As further pendent state causes of action, at all times material and relevant herein, Defendants, by acts committed criminal and civil false imprisonment, filed false police reports, and failed to intercede and maliciously prosecuted Plaintiff. TEXAS PENAL CODE, TEXAS LOCAL GOVERNMENT CODE AND TEXAS CIVIL PRACTICE AND REMEDIES CODE.

## W.    SIXTH CLAIM FOR RELIEF

### EXEMPLARY DAMAGES

110.    The facts and allegations contained in Paragraphs 1 through 91 are incorporated herein by reference the same as if fully set forth verbatim.

111.    At all times material thereto, Defendants, jointly and severally, acted with such gross misconduct, gross negligence and such callous disregard for the Plaintiff McCracken rights so as to shock the conscience of any reasonable person such that the individual Defendants, jointly and severally, should be required to pay punitive damages in order that Defendants may be restrained from committing such acts against any persons or citizens in the future. 42 USC 1983.

## X.    PRAYER

112.    As a result thereof, Defendants are jointly and severally bound and liable to Plaintiff herein in the sum of not less than Eighteen Million Five-Hundred Thousand Dollars (18,500,000.00) for which sum Plaintiff respectfully prays. WHEREFORE, Plaintiff prays that Defendants be served with process and answer herein and that, upon a final hearing, the court

(a.)    issue an injunctive relief order to the Defendant City ordering that in every SAPD vehicle/car/motorcycle, truck/patty wagon/vehicle unit, marked or unmarked, there be installed perpetually running video equipment and to maintain the images depicted in every police officer stop of a citizen for a period not less than five (5) years.

(b)    an injunctive relief order to the Defendant City ordering that every SAPD officer wear a lapel video and audio camera and to maintain the images depicted in every police officer stop of a citizen for a period not less than five (5) years.

(c.)    award Plaintiff Michael McCracken $18,500,000 against Defendants, jointly and severally;

(d.)    award Plaintiff exemplary damages against Defendants, severally and jointly, in an amount sufficient to punish each of the Defendants and/or to deter and make an example of those Defendants in order to prevent similar conduct in the future;

(e.)    award Plaintiff reasonable and necessary attorneys' fees and expenses of litigation;

(e.)     court costs;

(f.)     award Plaintiff pre-judgment and post-judgment interest as provided by law; and,

(g.)     award any other general relief to which Plaintiff may show himself entitled.

Dated: November 13, 2006

                          Respectfully submitted,


                          Law Offices of
                          James W. Myart, Jr. P.C.
                          *"The Preston House"*
                          1104 Denver Blvd.
                          San Antonio, Texas 78210
                          Phone: (210) 533-9461
                          Fax: (210) 533-4815
                          E-mail: jwmyartlaw@satx.rr.com

                          By:
                              James W. Myart, Jr.
                              Texas Bar No. 14755950
                              Federal Bar # TX0021, DCD


**PLAINTIFF RESPECTFULLY REQUESTS A JURY TRIAL**