UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MICHAEL MCCRACKEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: SA-06-CV-988-XR |
| | ) | |
| PHIL HARDBERGER, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

On this date, the Court considered various motions to dismiss and/or for summary judgment (docket nos. 11, 19, and 35), as well as Plaintiff's responses.

**Background**

What is undisputed in this case is that on the night of March 9, 2006, Plaintiff was shot in the back of his arm by San Antonio Police Officer Michael Garza. Whether this police officer was justified in using this force is hotly contested by Plaintiff. In his Complaint, Plaintiff alleges that he and a friend went to his sister's house and retrieved a Mac 90 rifle because he felt he needed protection from drive by shooters. He alleges that after retrieving the rifle he traveled by car back to his home when he noticed a police vehicle near the driveway of his home. He further alleges that he told his friend who was driving to go past his house since he had a weapon in the car and he did not know why the police were near his home. He further alleges he intended to take the rifle to his friend's home. Once they arrived to their new location, Plaintiff alleges that he saw two men running toward him and that because he did not recognize them he began to run with the rifle in his hand. Plaintiff claims the individuals did not announce that they were police officers and no command was given to stop. Plaintiff then alternatively states in his complaint that he thought he heard a police

radio and accordingly he threw the rifle and attempted to jump a fence.  He claims that at this point he was shot.  Plaintiff raises numerous causes of action against various defendants in essence claiming unjustified deadly force was used against him and that city police officers are "brutalizing" citizens for "their own personal satisfaction" under color of law and city policies.

## Analysis

Plaintiff's earlier responses which were filed by his previous counsel appeared to contest all pending motions in this case.  The last filed response (docket no. 59) filed by current counsel appears to not oppose  the motions filed by all defendants (except Garza).  In the event that some of the other co-defendant motions are still opposed, the Court has reviewed the motions and responses and rules as follows:

### A.      Schiller's motion for qualified immunity

The doctrine of qualified immunity shields government officials performing discretionary functions from civil liability "'insofar as their conduct does not violate clearly established ... constitutional rights of which a reasonable person would have known.'"  *Meadours v. Ermel*, 483 F.3d 417, 422 (5th Cir. 2007).

A two-step analysis applies to reviewing a motion for summary judgment based on qualified immunity.  First, the Court determines whether a constitutional right has been violated based on the facts Plaintiff has alleged.  Second, the Court determines whether the officer's conduct was objectively reasonable in light of "clearly established" law at the time of the alleged violation.  *Id.* at 422-23.

Plaintiff's complaint is far from clear, but it appears that Plaintiff is alleging that Schiller was at the scene of the shooting and failed to intervene and prevent Garza from shooting him.  However,

in paragraph 27 of his Complaint, Plaintiff equivocates and states that possibly Schiller was at the scene after the shooting.

In his motion for summary judgment, Schiller provides an affidavit clearly stating that he responded to the scene after he heard on the radio there was an officer involved shooting.  He further testifies that he was not involved in any manufacture of false evidence directed against Plaintiff. Again, Plaintiff provides no summary judgment evidence to refute this affidavit and thus no fact issue is present.

Schiller's motion for summary judgment (docket no. 35) is GRANTED and accordingly any claims against Schiller are dismissed.

### B.     Section 1983 Claim - policy or custom

Under § 1983 , to recover from a governmental entity based on the theory of official policy or custom, a plaintiff must demonstrate "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)."  *Castro v. McCord*, 2007 WL 4467566 (5th Cir. 2007)(citations omitted).

The first prong, the existence of a custom or policy, can be established in two ways. First, it can be shown by a policy statement, regulation, or official position adopted by policymakers that resulted in the plaintiff's injury. *Id.*  Plaintiff does not specify any policy statement, regulation or official position.  Accordingly, it appears that Plaintiff relies on the second method, which requires showing "[a] persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such

custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority."  *Id.*

However, "[a]ctions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy."  *Id.* (citing Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir.1984) (en banc)).

Although Plaintiff's Complaint alleges that there have been numerous "attacks" on citizens by police officers, allegations are not competent summary judgment evidence.  In response the Police Chief has tendered competent summary judgment evidence that the SAPD has numerous policies controlling the conduct of its officers, that SAPD officers arrest approximately 60,884 individuals every year and that each year approximately 52 allegations of excessive force are made.  No breakdown was provided as to how many of the excessive force claims made involved a police officer drawing and firing his or her weapon.  Plaintiff bears the burden of establishing a fact issue in this regard; he has failed to do so.

Finally, to establish the existence of policy or custom, plaintiff alleges that the post-shooting failure to discipline SAPD Officer Garza constituted "ratification" of Garza's conduct.  First, Plaintiff tenders no competent summary judgment evidence to establish that Garza has indeed not been disciplined.  Secondly, *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir.1985) which recognizes this ratification theory has been limited by the Fifth Circuit to its unique facts.  *See Castro v. McCord*, 2007 WL 4467566 ("*Grandstaff*, however, does not stand for the broad proposition that if a policymaker defends his subordinates and if those subordinates are later found to have broken the law, then the illegal behavior can be assumed to have resulted from an official policy.").

Plaintiff has wholly failed to provide competent summary judgment evidence on this issue

4

of custom, policy or ratification. *Castro v. McCord*, 2007 WL 4467566 ("[W]e have emphasized that, when seeking to prove a municipality's malevolent motive, plaintiffs must introduce more evidence than merely the opinion of an expert witness. In *Stokes v. Bullins*, 844 F.2d 269 (5th Cir.1988), the district court relied primarily on the testimony of a single expert witness in holding that the municipality violated § 1983 . We disagreed, remarking that an expert's opinion should not be alone sufficient to establish constitutional 'fault' by a municipality in a case of alleged omissions, where no facts support the inference that the town's motives were contrary to constitutional standards.").

**C.** **Individual section 1983 claims asserted against City Manager Sculley and Police Chief McManus**

Plaintiff alleges that City Manager Sheryl Sculley and SAPD Police Chief William McManus negligently selected, supervised, and trained the city police force. The Court construes the vague complaint as stating that they negligently hired, trained and supervised SAPD Officer Garza.

"Under section 1983 , supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005).

To establish § 1983 liability against supervisors, the plaintiff must show that: (1) the police chief and/or city manager failed to supervise or train the officer; (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights; and (3) the failure to supervise or train amounted to deliberate indifference to the plaintiff's constitutional rights. *Id.*

Again, Plaintiff presents no evidence to support his allegations.

The City has established by competent summary judgment evidence that Garza was employed on October 15, 2001. Prior to this incident he held a valid peace officer license and had completed

numerous hours of law enforcement courses, including instruction on the use of non-deadly and deadly force.

With regard to Police Chief McManus, he began his employment with SAPD on April 17, 2006 (just one month after this incident). Sheryl Sculley became San Antonio's City Manager in November 2005. Plaintiff offers no evidence of failure to train or supervise. With regard to any negligent hiring claim, Sculley and McManus were not even employed by the City when Garza was hired. Plaintiff offers no evidence that any causal connection existed between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights. Finally, Plaintiff offers no evidence that any failure to supervise or train amounted to deliberate indifference to the plaintiff's constitutional rights. Summary judgment is GRANTED to Sculley and McManus as to any individual claims asserted against them. Docket no. 19 is GRANTED.

**D.    Section 1981 claim**

Section 1981 states, in relevant part, as follows:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

It is uncertain whether in the context of an unreasonable use of force by police case, a section 1981 claim is viable. Assuming such a cause of action is viable, Plaintiff nevertheless has failed to bring any competent summary judgment evidence of discriminatory purpose and intent, which are necessary elements of a claim brought under section 1981. Accordingly, summary judgment for

Defendants on this claim is proper.  Alternatively. the complaint merely states in conclusory fashion that city police officers were "targeting" "Blacks and Browns".  No further pleadings are provided.  Because the complaint contains no factual allegations of discriminatory intent, plaintiff's claim based on section 1981 against all defendants must be dismissed.

### E.      Section 1985(3) Claim

Section 1985(3) states, in part "If two or more persons in any State ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; ... or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

Defendants argue that inasmuch as they are all employees or officials of the City of San Antonio, any claim for conspiracy fails as barred by the intra-corporate conspiracy doctrine.  Many courts have followed this doctrine in cases alleging a violation of section 1985(2).  *See Wright v. Illinois Dept. of Children & Family Services*, 40 F.3d 1492 (7th Cir. 1994)(citing numerous cases that hold the employees and agents of a governmental agency are members of the "same collective entity" and therefore are not separate "persons" who may form a conspiracy within the meaning of § 1985).

The Fifth Circuit has not yet adopted this theory in a section 1985(3) context.  Inasmuch as the Court may resolve this claim on another basis, this Court does not rule on that argument.  The Court nevertheless grants the Defendants' summary judgment motions because to "advance past the summary judgment stage, [Plaintiff] must allege with particularity and specifically demonstrate

7

material facts that the defendants reached an agreement.  While those allegations may include circumstantial evidence, [Plaintiff] presents no specific material facts, circumstantial or otherwise, that the officers formed an agreement to violate [Plaintiff's] constitutional rights." *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569 (8th Cir. 2006).   Accordingly, summary judgment for Defendants on this claim is proper.

### F.    Official Capacity Claim against Mayor Hardberger

Plaintiff also brings suit against the Mayor of the City of San Antonio basically under a respondeat superior theory.  However, inasmuch as the Court has dismissed all claims that were asserted against the City and its officials, there are no surviving theories under which the Mayor in his official capacity can be found liable.

### G.    Texas Tort Act and the assault claim

Defendants argue that Plaintiff's state law tort claims are barred by the Texas Tort Claims Act, Texas Civil Practice and Remedies Code § 101.106(a).  Pursuant to the Fifth Circuit's decision in *Meadours v. Ermel*, 483 F.3d 417, 424 (5th Cir. 2007), the TTCA does not bar Plaintiff's state law assault claims in this case.  That statute, barring suits against governmental employees if plaintiffs bring suit against the governmental unit, does not apply to intentional torts. See Tex. Civ. Prac. & Rem. Code § 101.057(2) (excluding from the entire chapter claims "arising out of assault, battery, false imprisonment, or any other intentional tort" ).

### H.    Assault and Battery Claim

The elements for civil assault mirror those required for criminal assault. *See Johnson v. Davis*, 178 S.W.3d 230, 240 (Tex. App.-Houston [14th Dist] 2005, pet. denied). A person commits an assault if he intentionally or knowingly causes physical contact with another when the person

knows or should reasonably believe that the other will regard the contact as offensive or provocative. *Umana v. Kroger Texas, L.P.*, 239 S.W.3d 434 (Tex. App. - Dallas 2007, no pet. h.).

It is uncontested that Officer Schiller did not assault Plaintiff and he is not Officer Garza's supervisor. Accordingly, such a claim fails against Schiller.

Arguably, Plaintiff's complaint seeks to establish vicarious liability against the City, the Mayor, the City Manager and the Police Chief.

Under the doctrine of respondeat superior , an employer may be held "vicariously liable for the torts of its servants committed in the course and scope of their employment." *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 617 (Tex.1999). "Under Texas law, an employee's conduct is considered to fall within the scope of his employment if his actions were (1) within the general authority given him; (2) in furtherance of the employer's business; and (3) for the accomplishment of the object for which the employee was employed." *Bodin v. Vagshenian*, 462 F.3d 481, 484 (5th Cir.2006).

"As a general rule in Texas, an employer cannot be vicariously liable for the intentional torts of assault or battery perpetrated by its employee because such acts are not ordinarily within the course and scope of an employee's authority or employment." *Wrenn v. G.A.T.X. Logistics, Inc.*, 73 S.W.3d 489 (Tex. App.- Fort Worth 2002, pet. granted); *Kelly v. Stone*, 898 S.W.2d 924, 927 (Tex. App. - Eastland 1995, writ denied). This is because "[i]t is not ordinarily within the scope of an employee's authority to commit an assault on a third person." *Kelly*, 898 S.W.2d at 927 *(citing Texas & P. Ry. Co. v. Hagenloh*, 151 Tex. 191, 247 S.W.2d 236, 237 (Tex.1952)); *Bodin*, 462 F.3d at 484 (same). "Assault is usually the expression of personal animosity and is not for the purpose of carrying out the employer's business." *Kelly*, 898 S.W.2d at 927; *Wrenn*, 73 S.W.3d at 494. "The

9

plaintiff bears the burden of proving that the employee acted for reasons other than personal animus" and that the assault was in fact in furtherance of the employer's business. *See, e.g., Bodin*, 462 F.3d at 485 (*citing Garrett v. Great W. Distrib. Co. of Amarillo*, 129 S.W.3d 797, 800 (Tex. App.-Amarillo 2004)).

Plaintiff has failed to present any evidence that the alleged assault (rather than a lawful arrest) was in furtherance of the City's business or that the alleged assault was for the accomplishment of the object for which Garza was employed. Garza was employed by the City to act as a lawful police officer, not act outside the scope of his lawful authority. Therefore, these Defendants may not be held liable on a respondeat superior theory.

That leaves the question as to whether a cause of action for civil assault may be asserted against Garza. That question is addressed below in the section addressing his qualified immunity defense.

## I.     Texas Tort Act and the state negligence claims

Defendants argue that any negligence claim not barred by the TTCA is barred because Plaintiff failed to provide timely notice. Section 101.101(a) of the Texas Tort Claims Act provides that a "governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred." Tex. Civ. Prac. & Rem. Code § 101.101(a). Here, the City received notice two months late. The TTCA notice requirements do not apply, however, if the governmental unit has "actual notice" that the claimant was injured. Tex. Civ. Prac. & Rem. Code § 101.101(c). It is undisputed that the City was aware that Plaintiff was shot by one of its own police officers.

Alternatively, the individual defendants argue that any negligence claims against them must

be dismissed because Plaintiff is seeking such a claim from the city and pursuant to Tex. Civ. Prac. & Rem. Code § 101.106(e) and (f), dismissal of the negligence claims against them is proper.

Pursuant to *Ibarra v. Harris County Texas*, 243 Fed. Appx. 830 (5th Cir. 2007), the "defendants misread the statute. Subsection (b) of § 101.106 states the converse of subsection (a): suing an employee constitutes an irrevocable election and bars suit against the governmental unit. Subsection (e) states that if both the employees and the governmental unit are sued 'the employees shall immediately be dismissed on the filing of a motion by the governmental unit.'"  In this case, both the City of San Antonio and its employees were sued; therefore, subsection (e) controls.  The City of San Antonio has never filed a motion to dismiss its employees; therefore, the individual defendants have no automatic right to dismissal.  Because the City has failed to file the appropriate motion, summary judgment on the basis of statutory immunity under the TTCA is not appropriate at this time.

Nevertheless, dismissal of the negligence claims against all the individual defendants except Garza is appropriate in light of this Court's findings that all of these individual defendants are entitled to qualified immunity.  Because the Court has found the federal claims barred by qualified immunity, the state law claims are barred by official immunity.   Texas law provides that "[g]overnment employees are entitled to official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority." *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex.1994).

**J.**      **Assault, negligence and section 1983 claim against Garza in his individual capacity**

Officer Garza moves to dismiss Plaintiff's assault, negligence, and section 1983 claims

against him in his individual capacity by asserting qualified immunity.

Public officials acting within the scope of their official duties are shielded from civil liability by the qualified immunity doctrine. *Harlow v. Fitzgerald*, 457 U.S. 800, 815-19 (1982). Government officials are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818.

In order to establish that the defendant is not entitled to qualified immunity, a plaintiff must satisfy a two-part test: (1) under existing law, does the plaintiff allege a violation of an actual, clearly established constitutional or federal statutory right; and (2) if so, was the defendant's conduct objectively unreasonable in the light of clearly established law at the time of that conduct. *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 325 (5th Cir.1998).

Qualified immunity "serves to shield a government official from civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of then clearly established law." *Thompson v.. Upshur County, Tex.*, 245 F.3d 447, 456 (5th Cir. 2001). To that end, where a defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff then has the burden "to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." *Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir.1997). Courts in the Fifth Circuit do "not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs." *Id.*

The second prong "focuses not only on the state of the law at the time of the complained of conduct, but also on the particulars of the challenged conduct and/or of the factual setting in which

12

it took place." *Pierce*, 117 F.3d at 872. A "defendant's acts are ... objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." *Thompson*, 245 F.3d at 457.

Plaintiff argues that Garza's use of excessive force was an unreasonable seizure, thereby depriving him of his constitutional right be free from unreasonable seizures guaranteed under the Fourth and Fourteenth Amendments of the U.S. Constitution. A claim that a law enforcement officer used excessive force in the course of an arrest is analyzed under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). An excessive-use-of-force claim requires a plaintiff to prove 1) an injury, which 2) resulted directly and solely from the use of force that was clearly excessive to the need, and the excessiveness of which was 3) objectively unreasonable. *Ikerd v. Blair*, 101 F.3d 430, 433-34 (5th Cir.1996). This determination "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

In this case, there is no dispute that Plaintiff suffered a significant injury (bullet wound in the arm) which resulted from Officer Garza's use of force. Thus, the only question is whether Garza's use of force was "'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation.  In answering this question, we look at the totality of the circumstances, paying particular attention to 'whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest.'" *Stroik v. Ponseti*, 35 F.3d 155 (5th Cir. 1994).

13

As stated above, Plaintiff alleges that he first began running because he did not know who was chasing him. He alleges no identification was made by the two individuals chasing him that they were police officers. He further alleges no instruction to halt was given. He then states he heard a police radio and probably realized police officers were chasing him, so he threw away the weapon he was carrying. He then states he was shot while attempting to jump a fence.

Unfortunately for Garza, he fails to proffer any summary judgment evidence on this issue so that the court can review the totality of the circumstances. Through bits and pieces of the briefs in this case (which do not constitute competent summary judgment evidence), it appears that police officers were in the Plaintiff's area and involved in some drug bust. It is not clear which house was targeted by the police. Counsel for both sides allude to another person being chased. After that this Court is not provided any more facts (much less evidence) as to what transpired. The Court is not provided any evidence as to whether Plaintiff was also a suspect in the drug raid, was he being chased, how did Garza encounter him, did the officer identify himself and instruct the Plaintiff to halt or drop his weapon, did Garza see the Plaintiff holding the rifle, did Plaintiff discard the rifle before attempting to jump the fence, and why did Garza feel there was a necessity to shoot?

Defendant emphasizes to the Court the following from *Stroik v. Ponseti*:

"... we must avoid substituting our personal notions of proper police procedure for the instantaneous decision of the officer at the scene. We must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day. What constitutes 'reasonable' action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure." *Id.* 35 F.3d at 158-59.

The Court is mindful of the Fifth Circuit's language. The Court is also doubtful of Plaintiff's

14

version of events.  However, the Court requires evidence  before it can conclude that Garza's use of force was "objectively reasonable" in light of the facts and circumstances confronting him. Defendant Garza's motion to dismiss based on qualified immunity is DENIED without prejudice. Garza's alternate motion for summary judgment is DENIED without prejudice to reurging with competent summary judgment evidence.

### K.     Texas Constitutional Claims

Defendants argue that any state constitutional claims being asserted by Plaintiff are barred because the Texas Constitution does not provide for a private right of action for any damages for a violation of state constitutional rights.  The Court agrees.  The Texas Supreme Court explicitly rejected any private right of action under the Texas Constitution in *City of Beaumont v. Bouillion* 896 S.W.2d 143 (Tex. 1995); *Johnston v. Harris County Appraisal Dist.*, 58 F.3d 636, 636 (5th Cir. 1995).

### Conclusion

Schiller's motion for summary judgment (docket no. 35) is GRANTED and any claims against Schiller are dismissed.

Plaintiff has wholly failed to provide competent summary judgment evidence on the issue of custom, policy or ratification.  Any such claim against the City or any of the individual defendants is dismissed.

Summary judgment is GRANTED to Sculley and McManus as to any individual section 1983 claims asserted against them.  Docket no. 19 is GRANTED.

Assuming, arguendo, that a section 1981 is viable, Plaintiff nevertheless has failed to bring any competent summary judgment evidence of discriminatory purpose and intent, which are

15

necessary elements of a claim brought under section 1981.  Accordingly, summary judgment for Defendants on this claim is proper.  Alternatively. the complaint merely states in conclusory fashion that city police officers were "targeting" "Blacks and Browns".  No further pleadings are provided.  Because the complaint contains no factual allegations of discriminatory intent, plaintiff's claim based on section 1981 against all defendants must be dismissed.

Plaintiff presents no specific material facts, circumstantial or otherwise, that the City, its officials and officers formed an agreement to violate Plaintiff's constitutional rights.  Accordingly, summary judgment for Defendants is proper as to Plaintiff's section 1985(3) claim.

Dismissal of the state law negligence claims against all the individual defendants except Garza is appropriate in light of this Court's findings that all of these individual defendants are entitled to official immunity.

Officer Garza's motion to dismiss Plaintiff's assault, negligence, and section 1983 claims based upon qualified immunity is DENIED.  The Court requires evidence before it can conclude that Garza's use of force was "objectively reasonable" in light of the facts and circumstances confronting him.  Garza's alternate motion for summary judgment is DENIED without prejudice to reurging with competent summary judgment evidence.

Any state constitutional claims being asserted by Plaintiff are barred because the Texas Constitution does not provide for a private right of action for any damages for a violation of state constitutional rights.

Docket no. 11 is GRANTED, in part and DENIED, in part as stated above.

It is so ORDERED.

SIGNED this 25th day of January, 2008.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE